1

2

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT**

9

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

10

11    DANIEL RUDERMAN, an individual,

12               Plaintiff,

13         v.

14    ROLLS ROYCE MOTOR CARS, LLC,
           a Delaware Corporation, and
15    DOES 1 through 10, inclusive,

16               Defendants.

Case No. 2:20-cv-04529-JWH (RAOx)

**ORDER DENYING
DEFENDANT'S MOTION TO
COMPEL ARBITRATION [ECF
No. 22]**

17

18

19

20

21

22

23

24

25

26

27

28

## I.  INTRODUCTION

Before the Court is the motion of Defendant Rolls Royce Motor Cars NA, LLC to compel arbitration.[1]  The Court finds this matter appropriate for resolution without a hearing.  *See* Fed. R. Civ. P. 78; L.R. 7-15.  After considering the papers filed in support and in opposition, the Court **DENIES** the Motion.

## II.  BACKGROUND

Plaintiff Daniel Ruderman filed this action in Los Angeles County Superior Court on April 17, 2019.  In his Complaint, Ruderman asserts three causes of action:  (1) Violation of the Song-Beverly Act—Breach of Express Warranty; (2) Violation of the Song-Beverly Act—Breach of Implied Warranty; and (3) Violation of the Song-Beverly Act § 1793.2.[2]  Rolls-Royce removed the action to federal court on May 20, 2020.  The Court found removal proper on August 21, 2020.[3]

On September 23, 2020, Rolls-Royce moved to compel arbitration.[4]  Ruderman opposed on October 26, 2020,[5] and Rolls-Royce replied on November 6, 2020.[6]  On November 12, 2020, the Court ordered the parties to submit supplemental briefing regarding the applicability of a recent California appellate court opinion, *Felisilda v. FCA US LLC*, 53 Cal. App. 5th 486, *review*

---

[1]      Mot. of Def. Rolls Royce Motor Cars NA, LLC to Compel Arbitration and Stay Action (the "Motion") [ECF No. 22].

[2]      Compl. [ECF No. 1].

[3]      *See* Minute Order Discharging OSC [ECF No. 19].

[4]      *See* Motion.

[5]      Pl.'s Opp'n to Motion (the "Opposition") [ECF No. 27].

[6]      Def.'s Reply in Supp. of Motion [ECF No. 28].

*denied* (Nov. 24, 2020).[7]  On November 30, 2020, both parties provided their respective supplemental briefs.[8]

### III.  FACTUAL BACKGROUND

Ruderman's allegations in his Complaint are simple: On June 30, 2016, Ruderman leased a new 2016 Rolls Royce Ghost at an "authorized dealership."[9] The 2016 Ghost was defective.[10]  Rolls-Royce was unable to repair the defects successfully.[11]

### IV.  LEGAL BACKGROUND

The Federal Arbitration Act (the "FAA") provides that contractual arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The FAA establishes a general policy favoring arbitration agreements.  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011); *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) ("Section 2 of the FAA creates a policy favoring enforcement of agreements to arbitrate.").  This statute's principal purpose is to "ensure that private arbitration agreements are enforced according to their terms."  *Concepcion*, 563 U.S. at 347 n.6. "Arbitration is a matter of contract, and the FAA requires courts to honor parties' expectations."  *Id.* at 351.

Under the FAA, "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such an arbitration proceed in the manner provided for in [the arbitration] agreement."

---

[7]     Order Re: Suppl. Br. [ECF No. 29].
[8]     Pl.'s Suppl. Br. [ECF No. 32]; Def.'s Suppl. Br. [ECF No. 31].
[9]     Compl. ¶¶ 8 & 31.  Ruderman names this dealership as "Westlake Coach Company" in his Opposition.  Opposition at 1.
[10]    Compl. ¶ 9.
[11]    *Id.* ¶¶ 22 & 23.

1  9 U.S.C. § 4.  Upon a showing that a party has failed to comply with a valid

2  arbitration agreement, the district court must issue an order compelling

3  arbitration.  *Id.*  If such a showing is made, the district court shall also stay the

4  proceedings, pending the resolution of the arbitration, at the request of one of

5  the parties bound to arbitrate.  *Id.* § 3.

6  ## V.  DISCUSSION

7  Rolls-Royce moves to compel Ruderman to arbitrate this claim, based

8  upon the following language in the arbitration clause of the contract that

9  Ruderman signed with the dealership that leased him the vehicle:

10  Either you or I may choose to have any dispute between us decided

11  by arbitration and not in a court or by jury trial.  If a dispute is

12  arbitrated, I will give up my right to participate as a class

13  representative or class member on any Claim I may have against you

14  including any right to class arbitration or any consolidation of

15  individual arbitrations.  Discovery and rights to appeal in arbitration

16  are generally more limited than in a lawsuit, and other rights you and

17  I would have in court may not be available in arbitration . . . .

18  "Claim" broadly means any claim, dispute, or controversy, whether

19  in contract, tort, statute or otherwise, whether preexisting, present

20  or future, between me and you or your employees, officers, directors,

21  affiliates, successors or assigns, or between me and any third parties

22  if I assert a Claim against such third parties in connection with a

23  Claim I assert against you, which arises out of or relates to my credit

24  application, purchase or condition of this Vehicle, this Lease or any

25  resulting transaction or relationship (including any such relationship

26  with third parties who do not sign this Lease).[12]

27

28  [12]      Motion 1-2.

-4-

1   Rolls-Royce is not a signatory to this contract.  Its arguments for enforcing this

2   arbitration clause against Ruderman are considered in turn below.

3   **A.      Third-Party Beneficiary**

4   　　　Rolls-Royce alleges that it has a right to enforce the arbitration agreement

5   because it is an intended third-party beneficiary of the contract.[13]  "To sue as a

6   third-party beneficiary of a contract, the third party must show that the contract

7   reflects the express or implied intention of the parties to the contract to benefit

8   the third party."  *Comer v. Micor, Inc.*, 436 F.3d 1098, 1102 (9th Cir. 2006)

9   (citing *Klamath Water Users Protective Ass'n v. Patterson,* 204 F.3d 1206, 1211

10  (9th Cir.2000)).  Courts generally decline to find intended third-party

11  beneficiaries where sophisticated signatories of a contract could have named the

12  party as a beneficiary and did not.  *See Murphy v. DirecTV, Inc.*, 724 F.3d 1218,

13  1234 (9th Cir. 2013) ("To the extent the Customer Agreement is ambiguous

14  with respect to the parties' intent to benefit Best Buy, that rule of construction

15  militates against concluding that Best Buy is a third-party beneficiary, in light of

16  the fact that DirecTV clearly knew how to provide for a third-party beneficiary if

17  it wished to do so.").

18  　　　As excerpted more fully above, the contract provides that "you or I" (*i.e.*,

19  Ruderman or the seller) may compel arbitration of any claim "between me and

20  you or your employees, officers, directors, affiliates, successors or assigns."

21  Rolls-Royce alleges that because it is an affiliate of the auto seller, it is a third-

22  party beneficiary of this contract and can compel arbitration.  Ruderman

23  counters that the leasing contract does not make Rolls-Royce an affiliate and, in

24  fact, the contract disclaims association with the manufacturer's express

25  warranties over which Ruderman now sues.  Furthermore, Ruderman argues

26

27

_____

28  [13]      *Id.* at 5.

-5-

1    that there is no evidence that the signatories intended Rolls-Royce to be a third-

2    party beneficiary of the leasing contract.

3        Automotive companies routinely seek to compel arbitration as third-party

4    beneficiaries based upon this exact contractual language.  Federal district courts

5    in California have decided the issue both ways.  *Compare Tseng v. BMW of N.*

6    *Am., LLC*, No. 2:20-cv-00256-VAP-AFMx, 2020 WL 4032305, at *4 (C.D. Cal.

7    Apr. 15, 2020) (car company was an affiliate and therefore an intended

8    beneficiary); *Phillips-Harris v. BMW of N. Am., LLC*,

9    No. CV 20-2466-MWF (AGRx), 2020 WL 2556346, at *10 (C.D. Cal. May 20,

10    2020) (car company's provision of the warranty makes it an intended third-party

11    beneficiary) *with Schulz v. BMW of N. Am., LLC*, No. 5:20-CV-01697-NC, 2020

12    WL 4012745, at *5 (N.D. Cal. July 15, 2020) (car company not a third-party

13    beneficiary because the clause at issue "refers to the subject matter of the

14    dispute, not to the parties involved in the dispute").

15        The Court finds the reasoning of Ruderman and the *Schulz* court more

16    persuasive.  The reference to "affiliates" upon which Rolls-Royce hangs its hat

17    is in the definition of Claim: "'Claim' broadly means any claim, dispute, or

18    controversy . . . between me and you or your employees, officers, directors,

19    affiliates, successors or assigns."[14]  So far, so good, for Rolls-Royce; the drafter

20    of the contract clearly intended to include Rolls-Royce in identifying which

21    claims could be arbitrated.  But Rolls-Royce is clearly *not* included in the class of

22    litigants who may compel arbitration: "Either *you or I* may choose to have any

23    dispute between us decided by arbitration and not in a court or by jury trial."[15]

24    Rolls-Royce does not establish that the signatories of the contract intended to

25    include Rolls-Royce in the "you or I" who may compel arbitration.  As the

26

27    [14]    *Id.* at 2.

28    [15]    *Id.* (emphasis added).

1     *Schulz* court found, Rolls-Royce is therefore not an intended beneficiary of the

2     contract, and it may not compel arbitration on this argument.

3     **B.**     <u>**Equitable Estoppel**</u>

4           "[A]rbitration is a matter of contract and a party cannot be required to

5     submit to arbitration any dispute which he has not agreed so to submit." *Kramer*

6     *v. Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013) (citing *United*

7     *Steelworkers v. Warrior & Gulf Navigation Co.*, 63 U.S. 574, 582 (1960)).

8     However, a litigant who is not a signatory to an arbitration agreement may

9     enforce that arbitration agreement against a signatory if the relevant state law so

10     allows. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009).  In

11     California, a nonsignatory can enforce an arbitration agreement under the

12     doctrine of equitable estoppel in two circumstances:

13          (1) [W]hen a signatory must rely on the terms of the written

14          agreement in asserting its claims against the nonsignatory or the

15          claims are intimately founded in and intertwined with the underlying

16          contract, and (2) when the signatory alleges substantially

17          interdependent and concerted misconduct by the nonsignatory and

18          another signatory and the allegations of interdependent misconduct

19          are founded in or intimately connected with the obligations of the

20          underlying agreement.

21     *Kramer*, 705 F.3d at 1128–29 (internal citations and quotations omitted).

22           This type of case is not new.  The Ninth Circuit has long held that car

23     manufacturers like Rolls-Royce cannot enforce similar arbitration provisions in

24     contracts between consumers and car dealers against plaintiff consumers where

25     the plaintiff is not seeking to enforce a term of the contract. *Id.* at 1134

26     (arbitration could not be compelled where "Plaintiffs do not seek to

27     simultaneously invoke the duties and obligations of Toyota under the Purchase

28     Agreement, as it has none, while seeking to avoid arbitration"); *see, e.g.*, *Vincent*

1  *v. BMW of N. Am., LLC*, No. CV 19-6439 AS, 2019 WL 8013093, at *8

2  (C.D. Cal. Nov. 26, 2019) (arbitration could not be compelled where "Plaintiff's

3  claims do not rely on any of the terms in the Purchase Agreement, only the fact

4  that he purchased the vehicle" (arbitration provision at issue was identical to the

5  instant Arbitration Provision)); *Jurosky v. BMW of N. Am., LLC*, 441

6  F. Supp. 3d 963, 970 (S.D. Cal. 2020) (arbitration could not be compelled where

7  "all of Plaintiff's claims expressly reference BMW's warranties, [but] none of

8  them reference the purchase agreement").

9       *Kramer*, however, is not directly on point.  The arbitration agreement in

10  *Kramer* read as follows: "If either you or we elect, any claims or disputes arising

11  out of this transaction, or relating to it, will be determined by binding arbitration

12  and not by court action.  This includes all claims and disputes arising out of, or

13  relating to: the vehicle, your credit application, this contract, the sale or

14  financing of the vehicle, and any collection activities."  *Kramer*, 705 F.3d at

15  1124–25.  Crucially, the *Kramer* agreement does ***not*** include the third-party

16  language at issue in the arbitration provision of the contract that Ruderman

17  signed.  The absence of that language leaves a gap for other courts to fill.

18  Neither the Ninth Circuit nor the California Supreme Court has yet ruled on

19  whether an arbitration agreement identical to the one that Ruderman signed can

20  be enforced by a nonsignatory under the doctrine of equitable estoppel.

21       However, a California appeals court recently ruled on an arbitration

22  provision identical to the one Ruderman signed.  *Felisilda* had similar facts: the

23  Felisildas purchased a used vehicle from a dealer, and, when the vehicle turned

24  out to be a lemon, they sued both the dealer and the manufacturer.  *Felisilda*, 53

25  Cal. App. 5th at 489.  The dealer moved to compel arbitration based upon an

26  arbitration contract virtually identical to the one that Ruderman signed, the

27  manufacturer filed a notice of non-opposition, and the trial court compelled the

28  Felisildas to arbitrate their claims against both the dealer and the manufacturer.

The California appellate court upheld the decision compelling the Felisildas to arbitrate their claims against the manufacturer "because the Felisildas expressly agreed to arbitrate claims arising out of the condition of the vehicle—even against third party nonsignatories to the sales contract." *Id.* at 497.

But *Felisilda* is not directly on point, because the Felisildas sued both the manufacturer ***and*** the dealer. Ruderman, on the other hand, sued only Rolls-Royce. *Felisilda*, therefore, does not change state law that directly controls this case. *Kramer* remains the controlling precedent for this case. Under the *Kramer* line of cases, Rolls-Royce cannot compel Ruderman to arbitrate his claims against it under the doctrine of equitable estoppel.

## VI.  CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant Rolls-Royce's Motion to Compel Arbitration.

**IT IS SO ORDERED.**

Dated: January 7, 2021

John W. Holcomb
UNITED STATES DISTRICT JUDGE